UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INDELIZA ORTEGA, Individually )<br>and as Mother of ADRIAN ORTEGA, )<br>a Minor, )<br>            )<br>    Plaintiff, )<br>            )<br>v.         )<br>            )<br>THE UNITED STATES OF AMERICA, )<br>            )<br>    Defendant. ) | 16 C 5475<br><br>Chief Judge Rubén Castillo |

## **MEMORANDUM OPINION AND ORDER**

Indeliza Ortega ("Plaintiff") brings this action against the United States of America ("the Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* (R. 1, Compl.) Plaintiff alleges that the Government's physicians breached their duty of care and are responsible for the permanent injuries suffered at birth by Adrian Ortega, Plaintiff's son. (*Id.*) Pursuant to Federal Rule of Civil Procedure 42(b), the Government seeks to bifurcate discovery and trial into separate liability and damages stages. (R. 25, Mot. to Bifurcate.) For the reasons stated below, the Government's motion is denied.

## **BACKGROUND**

Throughout her pregnancy, Plaintiff was under the care of the Chicago Family Health Center ("FHC"), a federally qualified health center that provides medical, prenatal, obstetric, and nursing care in Chicago. (R. 1, Compl. ¶¶ 2-5.) During Plaintiff's initial prenatal visit on April 16, 2012, the FHC physicians observed several obstetrical risk factors, including advanced maternal age, obesity, and chronic essential hypertension. (R. 1-2, Certificate of Merit at 1.) Plaintiff's early examinations were otherwise unremarkable. (*Id.*) During her third trimester,

1

however, the physicians observed significant discrepancies between the fetus's gestational age and fundal height progression, indicating a potential for fetal macrosomia, or high birth weight. (*Id.*) Despite these signs, the FHC physicians allegedly did not counsel Plaintiff regarding the risks of natural childbirth with fetal macrosomia, nor did they discuss the option of performing a cesarean delivery. (R. 1, Compl. ¶ 9.) When Plaintiff went into labor on November 19, 2012, her doctors noted signs of fetal distress that are highly indicative of potential birth asphyxia. (R. 1-2, Certificate of Merit at 1.) However, Plaintiff's physicians did not perform a cesarean section, and complications and injuries sustained during child birth left her son with severe brain injury, permanent developmental delays, and neurologic injuries. (R. 1, Compl. ¶¶ 9-10.)

On May 23, 2016, Plaintiff filed this action under the FTCA, claiming that the Government, through its employees at FHC, breached its duty of care by neglecting to consider the high risks associated with fetal macrosomia and failing to perform a timely cesarean delivery during labor. (*Id.*) Plaintiff seeks medical expenses for Adrian's care on her own behalf, as well as damages for Adrian's pain and suffering, loss of a normal life, and lost future income. (*Id.* ¶ 10.) The Government filed a motion to dismiss for failure to state a claim on August 5, 2016. (R. 4, Mot. to Dismiss.) This Court denied the Government's motion. (R. 11, Mem. Op. & Order.)

On June 15, 2017, the Government filed the present motion to bifurcate discovery and trial into liability and damages stages. (R. 25, Mot. to Bifurcate.) Specifically, the Government asks the Court to bifurcate the proceedings "in order to conserve judicial resources, to potentially avoid lengthy and expensive damages discovery (including expert discovery), and to avoid the possibility of prejudice to the United States." (R. 26, Mem. at 1.) The Government also argues that Plaintiff will not experience unfair prejudice if this motion is granted because only three witnesses, all of whom are immediate family members, would be required to testify twice at trial

2

and any inconvenience would therefore be "very minor." (*Id.* at 9.) Plaintiff responded on July 11, 2017, arguing first that the Government has not sufficiently established that bifurcation would promote judicial economy and second that bifurcation would prejudice Plaintiff without preventing any significant prejudice to the Government. (R. 31, Resp. at 3-7.) The Government replied on July 14, 2017. (R. 32, Reply.)

## LEGAL STANDARD

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). The Court has discretion to bifurcate "provided that this ruling 1) serves the interests of judicial economy or is done to prevent prejudice to a party; 2) does not unfairly prejudice the non-moving party; and 3) does not violate the Seventh Amendment." *Krocka v. City of Chi.*, 203 F.3d 507, 516 (7th Cir. 2000). "The party seeking separate trials has the burden of showing that judicial economy would be served and the balance of potential prejudice weighs in favor of bifurcation." *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 837 (N.D. Ill. 2006). However, "because we are expected to act to secure the just, speedy, and inexpensive determination of every action, bifurcation remains the exception, not the rule." *Id.* at 836 (internal citation and quotation marks omitted).

## ANALYSIS

The Government acknowledges that the Seventh Amendment right to a jury trial is not implicated in this case because Plaintiff asserts a claim under the FTCA. (R. 26, Mem. at 9.) Pursuant to 28 U.S.C. § 2402, FTCA claims require a bench trial, not a trial by jury. As a result, only the first two factors are at issue here, and the Court will address each in turn.

## I. Judicial Economy or Prevention of Prejudice

### A. Judicial Economy

Although bifurcating liability and damages promises to serve judicial economy when litigating the first issue would make litigation of the second issue unnecessary, it is true in nearly every case that a defendant could prevail on liability and thus streamline a trial. *Fetzer v. Wal-Mart Stores, Inc.*, No. 13-cv-9312, 2016 WL 6833912, at *3 (N.D. Ill. Nov. 21, 2016). With this in mind, courts in this District have "look[ed] to two factors which demonstrate whether this potential benefit sufficiently tips the balance in favor of bifurcation." *Id.* (citation and internal quotation marks omitted). First, the Court assesses "the likelihood that a finding of no liability will actually occur: where the movant can make a *prima facie* showing of success, this Court is more likely to grant bifurcation in the interests of judicial economy." *Id.* (citation omitted). Second, the Court examines whether a finding of no liability will save substantial time and effort by eliminating "complex and time consuming" issues. *Id.* (citation omitted).

Regarding the first factor, the Government argues that "[a]t this point in the litigation it appears that the parties will present conflicting evidence and expert opinion regarding liability, and there is a substantial likelihood of a finding of no liability." (R. 26, Mem. at 6.) In the Government's view, "[g]iven the currently available information, it appears that liability will come down to the strength of each party's expert testimony and the credibility of the fact witnesses." (*Id.* at 7.) The Government concludes that "[b]ecause the finding on liability could go either way depending on expert discovery and the witness testimony at trial, there is a substantial likelihood of a finding of no liability." (*Id.*)

Plaintiff agrees that "a decision on liability will be based on the court's evaluation of the testimony of expert witnesses on both sides," but argues that the Government has provided no evidence that would allow the Court to determine the likelihood that the Government would

4

prevail on this issue. (R. 31, Resp. at 4.) Plaintiff argues that the Government "has failed to set out any set of facts that would make out a prima facie defense on the merits," and thus "[a]t best from defendant's perspective at this time, the issue of liability is a draw." (*Id.* (emphasis omitted)).

Based on the Government's position, that "the finding on liability could go either way depending on expert discovery and the witness testimony at trial," (R. 26, Mem. at 7), the Court finds that the Government has failed to show any particular likelihood of succeeding on liability. It is not enough to assert an indefinite possibility that one will succeed—one must actually give the Court enough to determine the likelihood of success. In *Fetzer v. Wal-Mart Stores, Inc.*, 2016 WL 6833912, on which the Government relies, the court found that it could not "accurately forecast the likely victor of these debates from paper alone" when "the parties present strongly conflicting evidence." *Id.* at *4. In this case, where the Government's motion is based upon a coin-flip possibility, the Court finds that it is similarly unable to determine the likelihood of the Government prevailing on liability at this stage of this litigation. Thus, the Court finds the first factor does not support bifurcation.

In its reply, the Government sets forth additional evidence and an argument that it will be able to establish that the FHA doctors did not breach their duty of care. (R. 32, Reply at 2-4.) Although the Government has presented the outline of a *prima facie* case that it could prevail on liability at trial, the Court finds that it does not sufficiently establish that the Government is substantially likely to prevail on this issue. As the Government has conceded elsewhere, the outcome of this case will likely depend on the authority and credibility of conflicting expert testimony, including on what standard of care the FHA doctors were subject to. (R. 26, Mem. at 7.) Because the actual outcome at trial will almost certainly depend on the nature of the expert

5

testimony, which is not before the Court at this time, the Court cannot reasonably project the likelihood that the Government will prevail at this time. *Fetzer*, 2016 WL 6833912, at *4.

Regarding this second factor, whether a finding of no liability would save substantial time and effort, the Court finds that the Government has shown it supports bifurcating this case. The Government asserts that "[b]ecause discovery and trial on damages will be difficult, lengthy, and expensive, bifurcation would save significant resources in the event of a finding of no liability." (R. 26, Mem. at 4.) The Government highlights that the parties have produced approximately 800 pages of medical records related to liability compared to approximately 3,000 pages concerning potential damages. (*Id.* at 2.) The Government also contends that bifurcation is appropriate because discovery and trial on the damages issue will add several months to the case and "will likely cost the parties collectively hundreds of thousands of dollars." (*Id.* at 5.) Finally, the Government argues that bifurcation would save judicial and party resources because more than a dozen fact witnesses and several expert witnesses possess information only relevant to the issue of damages. (*Id.* at 4-5.)

Plaintiff responds that the Government's argument regarding the number of pages of medical records that would be saved is without merit. (R. 31, Resp. at 4-5.) Plaintiff notes that courts in this District have cited the volume of documents saved as a reason for weighing in favor of bifurcation only when the parties would have to review millions of pages, not thousands. (*Id.* (citing *William Reber, LLC v. Samsung Elecs. Am., Inc.*, 220 F.R.D. 533, 538 (N.D. Ill. 2004).) Plaintiff further disputes the Government's contention that more than a dozen witnesses possess no information relevant to liability, arguing that many fact and expert witnesses, including family members, hospital personnel, treating physicians, and outside medical experts, may present evidence and opinions regarding both the liability and damages issues. (*Id.* at 5-6.)

"[O]nly the life care planner and economist are strictly damage witnesses," according to Plaintiff. (*Id.* at 6.) As such, Plaintiff argues that granting the motion may actually increase the judicial resources expended since the "Court will become involved in deciding whether a particular witness may be deposed during the 'liability' stage." (*Id.*)

While judicial resources may be expended in resolving some discovery issues, the Court believes that the potential savings in judicial and party resources, should the Government prevail on liability, weighs in favor of bifurcation. The Court agrees with Plaintiff that evaluating 3,000 pages worth of medical records during the damages phase is not enough by itself to tip the scales in favor of bifurcation. However, the Court finds the proportion of liability-related documents to damages-related documents to be telling of the relative complexity of each issue. Ultimately, the sum of resources that would be saved with a finding of no liability supports bifurcating the case into liability and damages phases. The issues related to damages in this case will consist of competing experts evaluating matters that are complex and time consuming. Damages discovery may also add several months to this case and could be very expensive to both parties. Although the number of fact and expert witnesses who possess information only relevant to the issue of damages is disputed, both parties will present conflicting life-care planners and economists to testify only on damages. A finding of no liability would eliminate the need for this testimony and the accompanying written evidence, potentially saving judicial resources. *See Fetzer*, 2016 WL 6833912, at *4 (noting that the second factors weighs in favor of bifurcation because a finding of no liability would save significant time and resources by obviating the need for the testimony of at least four expert witnesses and the evaluation of extensive, complex testimony from the parties' medical experts); *Comiskey v. United States*, No. 89 C 8195, 1992 WL 296374, at *2 (N.D. Ill. Oct. 14, 1992) (noting that bifurcation of the trial would save judicial resources

7

because it would reduce the number of trial days and prevent the wasteful expenditure of time and money on the introduction of damages evidence which may prove useless).

The Court also rejects Plaintiff's argument that bifurcation would not save judicial resources since several witnesses may testify in both the liability and damages phases. At this stage in the litigation, Plaintiff cannot definitively state whether certain fact or expert witnesses would be required to testify in both phases of the trial. In fact, Plaintiff notes that "until [the experts'] depositions are taken, it is impossible to know how their testimony may impact the liability issue." (R. 31, Resp. at 5.) Thus, because the Court cannot determine how many of Plaintiff's witnesses would testify in both phases of the trial, the Court cannot weigh that factor in Plaintiff's favor. *See Henry v. Milwaukee Cty.*, No. 04-C-0432, 2006 WL 1896404, at *2 (E.D. Wis. July 10, 2006) (declining to bifurcate because the movant failed to quantify or provide further details regarding the number of documents and witnesses that pertain to damages). Therefore, since bifurcation may save substantial time and effort, the Court finds that the judicial economy factor weighs in favor of bifurcation.

## B.    Prevention of Prejudice to the Government

In determining whether to bifurcate, the Court must also examine whether bifurcation would prevent prejudice to the Government. *Krocka*, 203 F.3d at 516. "When weighing the competing equities under Rule 42(b), prejudice is the Court's most important consideration." *Fetzer*, 2016 WL 6833912, at *5 (citation and internal quotation marks omitted). Here, the Government argues that it "faces some risk of unfair prejudice without bifurcation because damages evidence could potentially influence the decision on liability." (R. 26, Mem, at 8.) The Government worries that because this case involves a particularly sympathetic personal injury, "evidence about the extent of the injury might improperly influence the decision on liability." (*Id.*) While the Government does acknowledge that the risk of prejudice is mitigated because this

8

is case will be decided at a bench trial rather than a trial by jury, it notes that "judges are also subject to sympathetic impulses, and there is no need to introduce even the possibility of unfair prejudice when the issue can be avoided." (*Id.*) Plaintiff responds that "as the trial is a bench trial there is little, if any, risk of sympathy influencing the liability determination." (R. 31, Resp. at 7.)

The Court does not believe that proceeding with a single trial would prejudice the Government. The Court understands that in certain circumstances damages evidence may influence decisions regarding liability, especially in a medical malpractice case involving a particularly sympathetic personal injury. However, another court in this District has noted that "the type of prejudice that stems from jury confusion is not equally present in a bench trial" because judges do not have the same "difficulty understanding that some evidence may be considered only for a specific limited purpose." *Keyes Fibre Co. v. Packaging Corp. of Am.*, 763 F. Supp. 374, 376 (N.D. Ill. 1991) ("In light of the fact that this case will be tried by the court sitting without a jury, there is no real threat of prejudice."). This Court is confident that it will be able to separately consider the two issues as it presides over the bench trial, making a fair judgment based on the weight of the evidence. Thus, bifurcating liability and damages would not prevent prejudice to the Government.

## II.   Unfair Prejudice to Plaintiff

The Government argues that bifurcating this case would not unfairly prejudice Plaintiff. (R. 26, Mem. at 8.) Specifically, the Government proposes that there are likely only three witnesses who would be called upon to testify in both a trial on liability and one on damages. (*Id.* at 9.) These witnesses include Plaintiff, Adrian's father Rogelio Herrera, and Adrian's older brother Martin Robles. (*Id.*) Each of these witnesses has been or will be deposed once, and they are all members of Adrian's immediate family and therefore personally invested in this case. (*Id.*) Thus, according to the Government, "[a]ny inconvenience they may encounter from being

9

required to testify twice at trial would be very minor." (*Id.*) The Government also contends that Plaintiff will not be unfairly prejudiced by bifurcation since her cases for the liability and damages issues are not intertwined. (*Id.* at 6.) The Government differentiates these issues by explaining that, during the liability stage, Plaintiff will need to show only that a pre-birth breach of the relevant standard of care caused Adrian to suffer oxygen deprivation, which is distinct from the damages issue that focuses on the consequences of that oxygen deprivation. (*Id.*) Thus, at the liability trial, the parties' respective experts would be qualified to testify regarding causation without discussing damages. (*Id.*)

In contrast, Plaintiff contends that bifurcation would unfairly prejudice her because in a birth-injury case "the issues of liability, causation, and damages are inextricably intertwined." (R. 31, Resp. at 5.) Plaintiff asserts that the causes of hypoxic ischemic encephalopathy at birth are myriad, and in order to prove that Adrian's injuries resulted from a breach of the standard of care she must rely on witnesses who will also have damages-related testimony. (*Id.* at 5-6.) Therefore, without the opportunity to depose the physicians who treated Adrian after his birth, Plaintiff argues that she would be unfairly prejudiced in presenting evidence regarding breach and the cause of Adrian's injuries. (*Id.*) Plaintiff also disagrees with the Government's assessment that only three family members will be called to testify at both trials, noting that the treating physicians and Plaintiff's experts, many from out of state, may also be called to testify in both the liability and damages phases. (*Id.* at 6.) Because of the overlap in testimony, Plaintiff asserts that bifurcation would be expensive for her and inconvenient for her witnesses. (*Id.*)

The Court finds that separating discovery and trial into liability and damages phases would unfairly prejudice Plaintiff because the issues of liability, causation, and damages appear to be inextricably related. Courts in this District have declined to bifurcate cases when issues of

liability and damages overlap. *See Trading Techs. Int'l*, 431 F. Supp. 2d at 841 (finding bifurcation inappropriate because the issues of liability and damages were intertwined); *Clintec Nutrition Co. v. Abbott Labs.*, No. 94 C 3152, 1995 WL 228988, at *5 (N.D. Ill. Apr. 14, 1995) (declining to bifurcate because the issues overlapped and "proceeding on one claim and not the other would be grossly unfair" to the non-movant). In this case, there may be multiple causes associated with hypoxic ischemic encephalopathy at birth and the evaluations of these causes could be relevant to both the issues of liability and damages. (*See* R. 31, Resp. at 5-6.) The depositions of Adrian's pediatric neurologists, neonatologists, and the other treating physicians may reveal information about causation that is relevant to both the liability and damages issues. Thus, bifurcation may yield a scenario where Plaintiff cannot depose a particular fact witness who may possess information regarding both issues of liability and damages, which would unfairly prejudice Plaintiff's case. Plaintiff should have every opportunity to investigate all evidence pertaining to the issue of liability. Any restriction that would narrow the scope of discovery and trial enough to produce significant gains in judicial economy risks significantly prejudicing Plaintiff's presentation of her case on liability.

The varying expert witnesses may also be called to testify in both the liability and damages trials. If the case were bifurcated, these individuals, along with Plaintiff's family, would be forced to testify twice, creating inconvenience and significant expense to Plaintiff. Based on these reasons, the Court finds that bifurcation in the instant case would unfairly prejudice Plaintiff.[1] *See Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 623 (N.D. Ill. 2000) (denying a

---

[1] The Government also argues that because FTCA claims require a bench trial it is "almost certain that the trial itself will be *de facto* bifurcated" since the Court will first determine whether Plaintiff met her burden for establishing liability. (R. 26, Mem. at 5.) Therefore, the Government asks that the bifurcation be made *de jure* and extended to discovery so that the parties can move more expeditiously to trial on the issue of liability. (*Id.*) However, the Court rejects the Government's argument because there are expert and fact witnesses whose depositions may reveal pertinent information on both causation and damages.

motion to bifurcate because separate trials "would be highly prejudicial to the Plaintiff and cause unnecessary delay and expense"); *Gen. Citrus Int'l Inc. v. Remien*, No. 04 C 6402, 2009 WL 2409580, at *3 (N.D. Ill. Aug. 5, 2009) (denying motion to bifurcate where "there is at least some overlap in the evidence that relates to liability and the evidence that relates to damages" and bifurcation would harm non-moving party's ability to present its case).

In its reply, the Government adds that "if the court agrees that causation and damages are intertwined, the solution is simple: limit the first proceeding to issues of duty (i.e., what the standard of care required) and breach (i.e., whether Dr. Michel complied with the standard of care), leaving both causation and damages for the second trial, if necessary." (R. 32, Reply at 5.) The Government believes that "[i]f the court bifurcates this case so that the only issues decided in the first proceeding are duty and breach, then any prejudice to [Plaintiff] is minimal because the only witnesses who might possibly need to testify twice are [Plaintiff] and two immediate family members." (*Id.*)

The Court declines to bifurcate the trial along this line at this time. Under this scheme, the first trial would not conclusively resolve whether the Government is liable. Both parties may then have to expend resources on discovery and trial for damages in a second proceeding, even though it is possible that the Government will ultimately be found not liable due to lack of causation. While separating any specific issue off for individual decision always has the potential to shorten a case, the Government has not sufficiently demonstrated that this proposed bifurcation would be less prejudicial to Plaintiff than its earlier-proposed bifurcation. Additionally, the Government offers this modified proposal for bifurcation in its reply brief, after Plaintiff devoted many persuasive arguments in her response brief to the links between causation

---

Bifurcating without actually knowing whether a witness possesses knowledge on both issues would unfairly prejudice Plaintiff since it may limit her ability to present witness testimony relevant to her case.

and damages issues in this case. Without giving Plaintiff the opportunity to respond to what is, fundamentally, a new motion to bifurcate, this Court declines to grant on this revised basis at this time.

Ultimately, while the Court finds that bifurcation would promote judicial economy because a single trial including damages may be complex, lengthy, and expensive, bifurcation does not prevent prejudice against the Government and unfairly prejudices Plaintiff. Therefore, since "prejudice is the Court's most important consideration," the Court finds that the most relevant circumstances weigh against bifurcation at this time. *Fetzer*, 2016 WL 6833912, at *5; *see also DSM Desotech v. 3D Sys. Corp.*, No. 08 CV 1531, 2008 WL 4812440, at *5 (N.D. Ill. Oct. 28, 2008) (finding bifurcation inappropriate because it would prejudice plaintiff and defendant failed to show that such prejudice was outweighed by other considerations).

The Court notes, however, that as this case approaches trial, it may be appropriate to reconsider bifurcation of the trial proceeding itself. At this stage, the possible prejudice to Plaintiff that bifurcating discovery might cause militates against splitting the case. Once the parties have established what evidence each witness can speak to, the wisdom and efficiency of bifurcating this trial may become more clear. *See Dean v. City of Chi.*, No. 09 C 1190, 2009 WL 2848865, at *4 (N.D. Ill. Aug. 31, 2009) ("As the case develops, the degree of overlap among the various plaintiffs' claims and the prejudice that each side would experience from a joint trial or separate trials will become easier to assess. In the Court's view, the appropriate time to determine that issue will be after the conclusion of discovery and, in all likelihood, after the Court has ruled on dispositive motions."). At this point, the motion is denied.

## CONCLUSION

For the foregoing reasons, the Government's motion to bifurcate (R. 25) is DENIED. The parties shall appear for a status hearing on September 12, 2017, at 9:45 a.m. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: August 31, 2017**